IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHAUN P. RAYBORN, | No. 3:15-cv-01478-HZ |
| Plaintiff, | |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | OPINION & ORDER |
| Defendant. | |

Karen Stolzberg
11830 S.W. Kerr Parkway, #315
Lake Oswego, Oregon 97035

    Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

/ / /

1 - OPINION & ORDER

Lars J. Nelson
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

    Plaintiff Shaun Rayborn brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I reverse the Commissioner's decision and remand for a *de novo* hearing with a new ALJ.

## PROCEDURAL BACKGROUND

    Plaintiff applied for DIB and SSI on March 28, 2011, alleging an onset date of January 31, 2010. Tr. 291-97 (DIB); Tr. 283-90 (SSI). His applications were denied initially and on reconsideration. Tr. 184-88 (DIB, initial); Tr. 189-92 (SSI, initial); Tr. 199-02 (DIB, reconsideration); Tr. 203-05 (SSI, reconsideration).

    On March 28, 2013, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 100. The hearing was continued after the ALJ determined that a consultative examination was required. Id. Another hearing was scheduled for October 17, 2013, but Plaintiff failed to appear. Tr. 101-06. A third hearing occurred on January 9, 2014, at which Plaintiff and his counsel were both present. Tr. 60-76. On January 27, 2014, the ALJ found Plaintiff not disabled. Tr. 29-53. The Appeals Council denied review. Tr. 1-4.

FACTUAL BACKGROUND

Plaintiff alleges disability based on having brain damage, low back problems, and left lung acute pain. Tr. 373. At the time of the January 2014 hearing, he was thirty-five years old. Tr. 63. He has a GED and has past relevant work experience as a receiving clerk, an industrial forklift operator, a glass cut-off tender, a carpenter, a stock clerk, and in production assembly. Tr. 45, 63.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 34. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of degenerative disc disease of the lumbar spine, personality disorder, affective disorder, and a cognitive disorder, but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 34-36.

At step four, the ALJ concluded that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he can lift ten pounds frequently and twenty pounds occasionally. Tr. 36-37. He can sit, stand, and walk for six out of eight hours each day. Tr. 37. He can have no contact with the public and no more than occasional

interaction with others.  Id.  He is limited to simple, repetitive, one- to three-step tasks.  Id.  With this RFC, the ALJ determined that Plaintiff is unable to perform any of his past relevant work.  Tr. 45.  However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as small products assembler, housekeeper, and electronics worker.  Tr. 45-46.  Thus, the ALJ determined that Plaintiff is not disabled.  Tr. 47.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff first argues that he was denied due process at the January 2014 hearing.  Additionally, he challenges the rejection of medical and psychological opinions, as well as the rejection of lay testimony.  He also appears to assert that the ALJ's credibility finding is flawed.

5 - OPINION & ORDER

Because I agree with Plaintiff that the ALJ denied him due process, I remand the case with instructions that a new ALJ conduct a *de novo* hearing. I do not consider the other arguments.

The Social Security Act provides that claimants are entitled to a hearing in which witnesses may testify and evidence may be received. 42 U.S.C. 405(b)(1). Hearing procedures must be "fundamentally fair." Richardson v. Perales, 402 U.S. 389, 401-02 (1971) (noting further that procedural due process requires that the hearing, although informal, be fair). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation marks omitted); see also Martise v. Astrue, 641 F.3d 909, 921–22 (8th Cir. 2011) ("under the Fifth Amendment, procedural due process requires disability claimants to be afforded a full and fair hearing"); Ferriell v. Comm'r, 614 F.3d 611, 620 (6th Cir. 2010) ("In the context of a social security hearing, due process requires that the proceedings be full and fair.").

At Plaintiff's first hearing, on March 28, 2013, the ALJ questioned Plaintiff about his work history. Tr. 80-85. The testimony addressed his earnings and the nature of the jobs he performed. Id. When the ALJ asked Plaintiff why he was no longer looking for work, Plaintiff testified that he was struggling with severe back pain. Tr. 85. Other than imaging done on his cervical spine in 2001 in connection with a motor vehicle accident, there was no evidence in the record regarding his back. Tr. 84-85. At that point, the ALJ determined that Plaintiff needed a consultative examination. Tr. 86. The hearing was continued. However, because Plaintiff's lay witness, Cheryl Larson, was present, the ALJ agreed to hear her testimony. Tr. 86.

The ALJ questioned Larson about her relationship with Plaintiff, how Plaintiff performs odd jobs for her, and what makes Plaintiff agitated. Tr. 87-88. He then turned the questioning

over to Plaintiff's counsel. Tr. 89. She asked Larson about Plaintiff's difficulty "thinking through things" and his inability to focus. Tr. 89. She asked several more questions regarding his becoming overwhelmed including how he acted and the frequency of these occurrences. Tr. 89-90. She asked about his hygiene. Tr. 90. Then she asked him about his episodes of getting defensive. Tr. 91-92. At some point, the witness stated that she had to be "very careful how I phrase things so I don't push his buttons." Tr. 92. Plaintiff's counsel asked her to explain the "other things that are his buttons." Id. At this point, the ALJ interrupted and said: "I don't need to hear that. I think this has pretty well been beaten to death." Tr. 93.

As noted above, Plaintiff did not appear for the October 17, 2013 hearing. But, on January 9, 2014, after undergoing the consultative examination ordered by the ALJ, Plaintiff appeared with counsel before that same ALJ. Tr. 60-75. After questioning by the ALJ, which again was limited to work history issues, Plaintiff's counsel began her inquiry. Tr. 63-64. She initially asked Plaintiff questions about his emotional difficulties, problems getting along in the world, and problems getting along with other people. Tr. 64-65. He described being slow in gathering his thoughts and when people do not have the patience to allow him to say what he needs to, he finds it overbearing and it prevents him from keeping his "thoughts in order." Tr. 65. She asked him to describe what was going on "inside" when that happens. Id. He responded that it causes him a lot of anxiety and "builds to the point of shutdown." Id. Plaintiff's counsel then asked Plaintiff to describe what a shutdown is. Id. The ALJ did not allow a response to that question. Id. Instead, he interrupted and stated that "[y]ou don't need to describe it. That's pretty self-explanatory." Id.

Plaintiff's counsel resumed her questioning. Id. She asked Plaintiff about getting agitated

7 - OPINION & ORDER

or upset with people, and how he responds to people in certain situations. Id. The ALJ interrupted again, stating "[r]eally, Ms. Stolzberg, I understand that he has difficulty getting along with other people, that he tends to blow up, and that he shuts down, so I don't think we need to beat this dead horse any longer." Id.

Again, Plaintiff's counsel attempted to resume her questioning. Tr. 66. She asked a question about problems "staying organized to get things done in your life[.]" Id. The ALJ allowed Plaintiff to respond to that question, but before counsel could ask another question, the ALJ told her to "move on, please." Id. At this point, the following exchange occurred:

> ATTY: I'm a little at a loss, judge, what questions you want to hear about.
>
> ALJ: I don't want to hear anything. I've already read the record. I know what he says, I know what his claims are, I know what his allegations are, I know how he's demonstrated his behavior, I know what his work history is. I understand that he feels that he cannot work, and I understand the reasons therefore. I've also heard from a third party witness, so I don't need to hear anything more. If you want to perseverate on Mr. Rayborn's mental limitations, it's just not going to be helpful.
>
> ATTY: All right. Thank you.
>
> ALJ: Any additional questions?
>
> ATTY: I don't think so.
>
> ALJ: All right, Thank you.

Tr. 66-67.

Plaintiff argues that the ALJ abused his discretion and denied him due process by depriving him of his opportunity to testify fully about his disabilities. He also argues that the ALJ prejudged the case. He requests that the case be remanded to a different ALJ for a *de novo* hearing.

Defendant contends that the ALJ did not act improperly. First, Defendant notes that

8 - OPINION & ORDER

courts have the power to "participate in the examination of witnesses for the purpose of . . . controlling the orderly presentation of the evidence, and preventing undue repetition of testimony." United States v. Mostella, 802 F.2d 358, 361-62 (9th Cir. 1986) (internal quotation marks omitted).  The Mostella court warned, however, that such participation by the trial judge "may overstep the bounds of propriety and deprive the parties of a fair trial."  Id.

Defendant argues that the ALJ's actions at the hearing were within the ALJ's authority to control the presentation of evidence and present undue repetition of testimony.  Defendant makes the point that the ALJ had a "particular incentive" to control proceedings here because this was the third hearing in the case.  But, the first hearing was short and Plaintiff's testimony was limited to his work history.  Although the ALJ heard Larson's testimony, it is not a substitute for testimony by the claimant himself regarding his impairments. Moreover, the ALJ rejected Larson's testimony in part because she saw him only a couple of hours per week, if that.  Thus, Larson's testimony could not have provided a full picture of Plaintiff's daily activities, for example, or other descriptions of his impairments that only Plaintiff could provide.  The record shows that the first and only time Plaintiff was actually given an opportunity to discuss his impairments was at the January 2014 hearing.

Next, Defendant faults Plaintiff's counsel, contending that "the ALJ did not actually cut off questioning - *Rayborn's attorney did*[.]" Def.'s Resp. 4, ECF 20.  Defendant argues that although the ALJ was impatient, counsel still could have proceeded.  But certainly, Defendant must acknowledge that such persistence would have been at counsel's peril and could have negatively impacted her client.  Situations like these pose a dilemma for counsel who on the one hand desire to proceed with the questioning counsel has determined is necessary and relevant but

9 - OPINION & ORDER

on the other hand receive an unmistakably clear instruction from the judge to terminate that questioning. In social security cases, counsel appear repeatedly in front of the same judge, representing hundreds of clients. Thus, not only does counsel risk incurring the ALJ's ire as to her immediate client, she does so for her future clients as well. This increases the pressure on counsel to follow the judge's directive. Given the Hobson's choice presented to counsel, I reject Defendant's position that counsel is to blame.

Next, Defendant cites to Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), to argue that Plaintiff has waived the right to raise the due process issue here because he did not preserve it by raising it at the hearing. The court in Meanel did state that "appellants must raise issues at their administrative hearings in order to preserve them on appeal before" the Ninth Circuit. Id. at 1115. However, this was in response to the plaintiff's attempt to admit new statistics to show that there was a shortage of certain jobs in her area, thus contradicting opinions indicating that she could perform those jobs. Id. at 1115. Meanel is distinguishable given that the issue here is a question of law and due process. Moreover, unlike in Meanel, Plaintiff's counsel risked further angering the ALJ by arguing that his directive violated her client's constitutional rights.

Finally, even if Meanel applies and Plaintiff waived the issue, I exercise my discretion to address it. As I explained in a 2015 case:

> There are three exceptions to the general rule that the court will not consider an issue raised for the first time on appeal: in the exceptional case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, when a new issue arises while appeal is pending because of a change in the law, or when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.

Bishop v. Colvin, No. 3:14-cv-00524-HZ, 2015 WL 1874879, at *8 (D. Or. Apr. 23, 2015).

10 - OPINION & ORDER

Here, review is necessary to prevent a miscarriage of justice and to preserve the integrity of the administrative hearing process.

In its final argument, Defendant contends that even if the ALJ abused his discretion, Plaintiff does not establish prejudice. Defendant contends that Plaintiff fails to identify any specific mental symptoms or limitations that the ALJ failed to address in the decision that Plaintiff could have addressed at the hearing. Further, Defendant argues that because the record as a whole shows fundamental fairness, I must reject Plaintiff's due process argument.

Addressing this last argument first, the case Defendant relies on is distinguishable. In Bayliss v. Barnhart, 427 F.3d 1211 (9th Cir. 2005), the plaintiff argued that her due process rights were violated because the ALJ was "preoccupied with whether her attorney properly disclosed a doctor's report, and thus that the ALJ did not impartially assess the evidence." Id. at 1214. The court explained that to prevail, the plaintiff had to show that the ALJ's conduct, examined in the context of the whole case, was "so extreme as to display clear inability to render fair judgment[.]" Id. at 1214-15 (internal quotation marks omitted).

The record revealed that the ALJ believed the plaintiff's counsel had acted inappropriately in the way counsel had procured medical record evidence. Id. at 1215. The ALJ also criticized counsel's reliance on "self assessments." Id. But, the ALJ wrote a "detailed forty-five-page opinion in which he carefully examined [the plaintiff's] medical history and addressed the opinion of each reviewing doctor." Id. Additionally, the ALJ had "previously conducted an extensive hearing." Id. The court explained:

> In his opinion resolving the case, the ALJ determined, based on substantial evidence, that [the plaintiff] was not credible. The ALJ found that objective medical evidence contradicted several of the doctors' reports submitted in support of [the plaintiff's] claim. He documented his findings and opinions in a detailed

11 - OPINION & ORDER

and reasoned opinion. In this context, the ALJ's statements attributing misconduct to [plaintiff's] counsel are not so extreme as to show that the ALJ could not render a fair judgment.

Id.

The issue in Bayliss was the impartiality of the ALJ. That is not the issue here. Given the focus in this case on Plaintiff's opportunity, or lack thereof, to be heard, Bayliss is not on point because the ALJ there had conducted an "extensive hearing." In contrast, here, Plaintiff was prevented by the ALJ from continuing the only testimony regarding his mental limitations that he was asked to provide. Because a claimant's right to tell his or her story to the ALJ is of utmost importance in a disability case, I cannot conclude that the context of the decision as a whole shows that Plaintiff received a fair hearing.

As to Defendant's other prejudice argument, Defendant relies on another distinguishable case. Defendant cites to Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001), for the proposition that precluding Plaintiff from testifying about his history is insufficient prejudice on which to overturn the ALJ's decision. In that case, the plaintiff argued that the ALJ erred in finding her subjective testimony not credible. Id. at 1147-48. The ALJ discredited her testimony because of her lack of cooperation at the hearing, her presentation at the hearing, her tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative examinations. Id. at 1148. The ALJ gave a "detailed explanation" in support of each of those reasons. Id.

The plaintiff argued that the ALJ should have given her the chance at the hearing to explain the inconsistent statements and other factors supporting the ALJ's adverse credibility determination. Id. The court dismissed this argument with a statement that it has "no merit," and further explained that even if it discounted the ALJ's observations of inconsistent statements and

12 - OPINION & ORDER

behavior for which the plaintiff could possibly provided "innocent explanations," the court was still left with substantial evidence supporting the ALJ's credibility determination.

Tonapetyan did not address a due process "full and fair" hearing issue. It does not stand for the proposition that a claimant suffers no prejudice when the ALJ effectively prohibits the claimant from testifying. Rather, it rejects the idea that a claimant, who had a full hearing, can undermine a credibility determination by arguing that it was the ALJ's burden to offer the claimant the opportunity to explain away an inconsistency the ALJ may not have even yet discovered. Here, the ALJ initially suggested, as he was entitled to do, that Plaintiff's counsel "move on" from certain questioning, that a topic had been "beaten to death" or that this "dead horse" did not need to be beaten any longer. These statements reveal the ALJ's impatience but they did not substantially prevent Plaintiff from testifying. The problem, however, is that the ALJ did not stop there. His statements that he "[did not] want to hear anything" and "I don't need to hear anything more" with the added remark that continuing was "just not going to be helpful[,]" evince his desire that Plaintiff stop testifying, precluding him from testifying further. Because the facts in Tonapetyan are sufficiently distinct from what occurred in this case, it is not controlling authority.

Plaintiff states that because of the ALJ's conduct, Plaintiff was unable to testify about topics such as whether he continues to smoke marijuana and if so why, why he has not sought more medical care or treatment, or how his pain impacts his abilities. Although the ALJ stated that he had reviewed the record and had already heard the lay witness testimony, these are not substitutes for hearing testimony from the claimant him or herself. Without being able to fully testify on relevant topics, Plaintiff was prejudiced.

CONCLUSION

The Commissioner's decision is reversed and remanded for a *de novo* hearing.

IT IS SO ORDERED.

Dated this 30 day of September, 2016

*Marco Hernandez*
Marco A. Hernandez
United States District Judge

14 - OPINION & ORDER